IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| TANISHA DEAN, | * | |
|     Debtor | * | CASE NO: 1:11-bk-05680MDF |
| | * | |
| TANISHA DEAN, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | ADV. NOS: 1:11-ap-00481MDF |
| | * |     and 1:11-ap-00505MDF |
| ARTHUR CARR, | * | |
|     Defendant | * | |
| | * | |

**OPINION**

**I. Procedural History**

On August 16, 2011, Tanisha Dean ("Debtor") filed a Chapter 7 bankruptcy petition along with Schedule D listing Arthur Carr ("Carr") as a creditor with a claim secured by a lien on a 2006 Toyota Solara (the "Solara"). On the Statement of Intention, Debtor indicated that she would retain the Solara and that Carr would retain his security interest in the vehicle "without payments from debtor." Debtor also asserted that the Solara would be claimed as exempt. On November 2, 2011, Debtor amended Schedule D, deleting Carr as a secured creditor. At the same time, she filed an amended Schedule F adding Carr to her list of unsecured creditors. Debtor did not amend her Statement of Intention.

On the same date she filed amended Schedules D and F, she commenced two adversary proceedings against Carr. In Adversary No. 1:11-ap-00481MDF (the "Lien Avoidance and Stay Enforcement Complaint"), Debtor requested the Court to determine the validity, priority, and extent of a lien purportedly held by Carr and to assess damages and sanctions for violation of the automatic stay, including turnover of the vehicle. In Adversary No. 1:11-ap-00505MDF (the

"Preference Complaint"), Debtor moved to avoid a judgment in favor of Carr entered against her in state court prior to her bankruptcy filing. Carr answered both complaints on March 20, 2012. On May 11, 2012, Debtor filed motions for summary judgment in each case. Briefs have been filed by the parties, and these matters are ready for decision.[1]

## II. Factual Findings

Debtor purchased the Solara, which was financed by Toyota Motor Credit Corporation, ("Toyota Credit") on an undetermined date. After Debtor defaulted on the loan, Toyota Credit repossessed the vehicle. At some time around August 2009, Carr loaned Debtor the funds necessary to satisfy the obligation to Toyota Credit so that she could redeem the vehicle. Carr is not in the business of making motor vehicle loans or loans of any kind.[2] Terms for repayment of the loan were not committed to writing; the agreement consisted of Carr's extension of the necessary funds and Debtor's oral promise to repay at some indeterminate future date.[3]

On August 27, 2009, Debtor and Carr executed and filed with the Pennsylvania Department of Transportation an Application to Record a Lien ("Form MV-38L") on the Solara in favor of Carr. Debtor was listed as the owner of the Solara on the form and Carr was to be named as the first lien holder. The form does not require the parties to identify or refer to a security agreement creating the lien. It identifies the collateral, but does not recite whether or not

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. These matters are core pursuant to 28 U.S.C. §157(b)(2)(A), (E), (F), and (K). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2]The parties are distant relatives – Debtor is the step-daughter of Carr's nephew.

[3]In his answer to the complaint in this case, Carr admitted "that there is nothing in writing regarding repayment of the loan" and again "that there is no written document regarding the loan or repayment terms."

2

the lien holder gave value to the vehicle owner. As of the date of Debtor's bankruptcy petition, Carr's name appeared on the vehicle title as a lien holder. In or around March 2010, Debtor voluntarily relinquished the Solara to Carr, who retained possession of the vehicle on the date Debtor filed her petition.

On May 27, 2011, a judgment was entered against Debtor and in favor of Carr in the Court of Common Pleas of York County in the amount of $9,962.78. The amount of the judgment included funds loaned by Carr to redeem the Solara, plus certain fees and costs associated with registering and insuring the vehicle and repairing it after a collision. Entry of the judgment serves as a lien on real property owned by Debtor located at 362 South Pershing Avenue, York, Pennsylvania.

On August 18, 2011, Debtor's bankruptcy counsel faxed a letter to Carr's counsel demanding turnover of the Solara based on Debtor's claim that the vehicle was property of the bankruptcy estate. In the letter, Debtor admitted that Carr "was given a lien on [Debtor's] vehicle when he paid off the previous loan of Toyota Financial [sic]." Carr received notice of Debtor's bankruptcy filing, but has refused to return the vehicle. In her bankruptcy petition, Debtor claims the Solara as exempt property under 11 U.S.C. § 522(d)(2) and (5).

### III. Discussion

A motion for summary judgment seeks resolution of a controversy based on the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Summary judgment may be granted if these documents show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Bankr. P. 7056 incorporating Fed. R. Civ. P. 56(c).

The burden of proving these two elements is allocated in the following manner. The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present legal argument or evidence to show that there is a genuine issue for trial. *Id.* at 324. All justifiable inferences from the evidence are to be drawn in favor of the non-moving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). "Where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of pleadings and must do more than create some metaphysical doubt." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,* 998 F.2d 1224, 1230 (3d Cir. 1993).

Local Bankruptcy Rule 7056.1 ("L.B.R. 7056.1") creates a framework to facilitate the Court's analysis of each party's evidence on summary judgment. Under L.B.R. 7056.1, parties litigating a motion for summary judgment must file, among other things, "a separate, short and concise statement of the material facts in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." L.B.R. 7056.1. All material facts set forth in a party's statement are deemed to be admitted unless controverted by the statement filed by the opposing party. L.B.R. 7056.1 promotes detailed consideration by counsel of all legal issues relevant to their respective positions at an early juncture in the proceeding. The statements contemplated by the rule enable the court to identify, at a glance, the facts that are in dispute. Unfortunately, neither party in this case complied with L.B.R. 7056.1. Had the rule been followed, the parties' briefs might have focused more precisely on the unusual factual and legal issues in this case.

*A. Lien Avoidance and Stay Enforcement Complaint*

In the Lien Avoidance and Turnover Complaint, Debtor seeks a determination that Carr does not hold a valid lien against the Solara and that he should be compelled to return the vehicle to her. She also requests damages based on allegations that Carr violated the automatic stay when he failed to return the vehicle after she filed her bankruptcy petition.

*1. Validity of Carr's lien*

Under the Pennsylvania's version of the Uniform Commercial Code (the "UCC"), a security interest is defined as a "lien created by agreement." 13 Pa. C.S. § 101(51). A security interest in "goods," a term that includes motor vehicles,[4] attaches and is enforceable if value has been given, the debtor has rights in the collateral and the debtor authenticated a security agreement that has a description of the collateral or the creditor has taken possession of the collateral. 13 Pa. C.S. § 9203(b).[5] While the UCC defines how a security interest in a motor

---

[4] The UCC defines "goods" as "[a]ll things which are movable when a security interest attaches." It goes on to exclude certain kinds of property such as fixtures, crops, manufactured homes and embedded computer programs from that definition, but it does not exclude motor vehicles. In his brief, Carr asserts that § 9203 ("Law governing perfection and priority of security interests in goods covered by certificate of title") and the related provisions of the Pennsylvania Motor Vehicle Code govern issues of attachment and enforceability of security interest in motor vehicles. However, as its title suggests, § 9203 addresses *perfection* of a security interest, not attachment. "Attachment" relates to the creation of a security interest between the parties; "perfection" is the process required to make the security interest effective against third parties.

[5] The text of § 9203 provides:

-Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor . . . with respect to the collateral only if all of the following apply:
    (1) Value has been given.
    (2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party.

5

vehicle is created and when it attaches, it defers to the Motor Vehicle Code to define how a security interest in a motor vehicle is perfected. *KDG Auto Sales, Inc. v. Asta Funding, Inc.*, 781 A.2d 202, 204 n.4 (Pa.Super. 2001) (noting that creditor "had an attached security interest in the cars [under] 13 Pa.C.S.A. § 9203," but that "in Pennsylvania, a security interest in vehicles may only be perfected by the method outlined in 75 Pa. C.S. § 1131: filing a title containing a notation of the security interest with the Department of Transportation.") *See also First National Bank of Pennsylvania v. Cech (In re Ambrose),* 148 B.R. 244, 246 n. 3 (Bankr. W.D. Pa. 1992) ("The Uniform Commercial Code provides that perfection of a security interest is governed by the Motor Vehicle Code.")

In this case, Carr asserts that the Form MV-38L and the August 18, 2011 letter from Debtor's counsel establish that he holds a valid lien on the Solara. He argues that these documents taken together constitute an authenticated "security agreement" under § 9203(b)(3)(i). It is not necessary for me to determine whether Carr's assertions are correct because I find that Carr held an enforceable security interest in the Solara when Debtor filed her bankruptcy petition. This interest was created by Debtor's voluntarily relinquishment of the vehicle to Carr in March 2010. In the absence of an authenticated security agreement describing the collateral, possession is an alternative method by which an enforceable security interest maybe created and attach. 13

---

      (3) One of the following conditions is met:
         (i) The debtor has authenticated a security agreement which provides a description of the collateral [or]
         (ii) The collateral is not a certificated security and is in the possession of the secured party . . . pursuant to the . . . security agreement.

13 Pa. C.S. § 9203(a) and (b).

Case 1:11-ap-00481-MDF    Doc 27    Filed 10/01/12    Entered 10/01/12 16:33:13    Desc
Main Document    Page 6 of 12

Pa. C.S. § 9203(b)(3)(ii); *Chambersburg Trust Co. v. Eichelberger*, 588 A.2d 549, 552, 403 Pa. Super 199, 205 (Pa. Super. 1991) (citation omitted) ("An enforceable security interest is created and attaches when collateral is in possession of the secured creditor or the debtor signs a security agreement which contains a description of the collateral, value has been given, and the debtor has rights in the collateral.") It is undisputed that Carr provided value to Debtor and that she had rights in the collateral. Once Carr obtained possession of the vehicle, the security interest attached. Accordingly, an Order will be entered denying Debtor's motion for summary judgment on the issue of whether Carr holds a valid lien against the Solara, and summary judgment will be entered in Carr's favor on that issue *sua sponte*.

## 2. Violation of the Automatic Stay and turnover of the Solara

Upon the filing of a bankruptcy petition, 11 U.S.C. § 362(a)(3)(a) prohibits a creditor from taking any action "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[6] Carr refused to return the Solara to Debtor after she filed her bankruptcy petition. Debtor asserts that Carr's actions violated the automatic stay.

When a debtor files a Chapter 7 petition, an estate is created consisting of all interests of the debtor in property on the date the petition is filed. *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001). Section 541(a)(1) of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The . . . language of this provision was

---

[6]Debtor's complaint cites § 362(a)(6), which prohibits any act to collect a pre-petition claim against the debtor, but I conclude that paragraph (3) of subsection 362(a) is more relevant to the facts of the case.

intended to sweep broadly to include 'all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently.'" *Walsh,* 246 F.3d at 241 (quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983)) (other citations omitted). Although Carr currently has physical possession of the Solara, the keys, and the title to the vehicle, he does not challenge Debtor's assertion that the vehicle is property of the estate. In answering Debtor's complaint, Carr admitted the specific allegation that "Debtor is the owner of the vehicle." (Complaint, ¶ 10; Answer ¶ 10). Therefore, there is no dispute that the Solara constitutes "property of the estate" under § 362(a)(3).

"In order to sustain an action for a violation of § 362(a)(3), three elements must be shown: (1) a property interest is involved; (2) the property interest is estate property; and (3) there occurred either an act to obtain possession of the estate property or there existed an act to exercise control over estate property." *In re Harchar*, 393 B.R. 160, 167 (Bankr. N.D. Ohio 2008) (citing *In re Allentown Ambassadors,* 361 B.R. 422, 440 (Bankr. E.D. Pa. 2007)). In the matter before me, I readily conclude that the stay has been violated by Carr's refusal to turn over the Solara to Debtor. By admitting that Debtor owns the vehicle, Carr admits that a property interest of the estate is involved. There is no dispute that Carr held possession of the Solara when the bankruptcy case was filed and that it has remained in his possession despite Debtor's demand for its return. Accordingly, Carr willfully violated the stay. See *Thompson v. General Motors Acceptance Corp., LLC.*, 566 F.3d 699, 703 (7th Cir. 2009) (creditor "exercised control" over vehicle within meaning of § 362(a)(3) by refusing to return it to the bankruptcy estate upon request); *Nissan Motor Acceptance Corp. v. Baker*, 239 B.R. 484, 488 (N.D. Tex. 1999) (creditor's failure to turn over repossessed automobile more than two months after notice of

8

filing violated stay). Carr's duty to return the Solara to the Debtor is a continuing one. Accordingly, an Order will be entered directing Carr to surrender the vehicle to Debtor. By directing Carr to return the Solara, however, the Court does not imply that the vehicle may be retained without Carr receiving payment from Debtor for the value of its secured interest. Although the parties did not specify the terms of repayment of the loan, there is an implied term in their agreement that Debtor will repay the loan in a reasonable time. "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Restatement (Second) of Contracts § 204 (1981); *Banks Engineering Co., Inc. v. Polons*, 561 Pa. 638, 644 n.4, 752 A.2d 883, 886 (Pa. 2000). Carr asserts that Debtor has made no payments on the loan, which Debtor does not dispute. Therefore, a further hearing in this matter will be held to determine the terms under which Debtor will be required to repay the loan if she intends to retain the Solara.[7]

    3. *Damages for violation of the automatic stay*

An individual seeking to obtain damages under § 362(k) for a violation of the stay has the burden of establishing three elements by a preponderance of the evidence: (1) that the action taken was in violation of the automatic stay; (2) that the action was willful; and (3) that the violation caused actual damages. *In re Frankel*, 391 B.R. 266, 271 (Bankr. M.D. Pa. 2008) (citing *Clayton v. King (In re Clayton)*, 235 B.R. 801, 806-07 n.2 (Bankr. M.D.N.C. 1998) (other

---

[7]Although the issue was not raised by either party, if Debtor had not contested the validity of Carr's lien, she would have been required to either reaffirm the debt or redeem the vehicle within 45 of the filing of the petition under 11 U.S.C. § 365(p)(2). If she had failed to do so, the stay would have lifted automatically.

9

Case 1:11-ap-00481-MDF    Doc 27    Filed 10/01/12    Entered 10/01/12 16:33:13    Desc
Main Document    Page 9 of 12

citations omitted). A violation of the stay is "willful" when a creditor with knowledge that a bankruptcy petition has been filed commits an intentional act that violates the stay. *Krystal Cadillac Oldsmobile GMC Truck, Inc. v. General Motors Corp. (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.),* 337 F.3d 314, 320 n.8 (3d Cir. 2003). Willfulness does not require that the creditor intend to violate the stay, but only that the creditor intend to take the action that is then determined to be in violation of the stay. *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1087 (3d Cir. 1992) (citing *Cuffee v. Atlantic Bus. and Comm. Corp. (In re Atlantic Bus. and Comm. Corp.*), 901 F.2d 325 (3d Cir. 1990); *Wingard v. Altoona Regional Health Sys. and Credit Control Collections (In re Wingard*), 382 B.R. 892, 901 (Bankr. W.D. Pa. 2010) (finding that creditor willfully violated stay when engaged in acts to collect debt with actual knowledge of debtors' bankruptcy filing).

In the matter before me, there is no dispute that Carr's refusal to return the Solara to Debtor was a willful act in violation of the stay. But it is necessary for the Court to hear evidence in order to determine the amount of damages to be awarded. Actual damages under § 362(k) must be proven by Debtor based upon concrete evidence of a definite amount. *In re Nixon,* 419 B.R. 281, 291 (Bankr. E.D. Pa. 2009) *citing Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004). Accordingly, a hearing will be set for the taking of evidence on the issue of damages allegedly sustained by Debtor as a result of Carr's violation of the stay.

    D. *Preference Complaint*

Section 547(b) of Title 11 enables a debtor in bankruptcy to avoid certain pre-petition transfers of property which allow the preferential treatment of the transferee creditor over other

10

similarly situated creditors. The purposes of the section are twofold – to discourage a "race to the courthouse" by creditors who may be made aware in advance of a debtor's intent to seek bankruptcy protection and to ensure equal treatment among all similarly situated creditors. *In re Molded Acoustical Products, Inc.,* 18 F.3d 217, 225 n.10 (3d Cir. 1994)(citation omitted). A transfer may be avoided as a preferential transfer under § 547(b) if the transfer were made:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if –
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by
> the provisions of this title.

11 U.S.C.A. § 547(b).

The entry of a state court judgment by a creditor against a debtor is a "transfer" for purposes of § 547(b). *In re Phoenix Associates Land Syndicate, Inc.*, Adv. No. 10-1020, 2011 WL 1337294 (Bankr. E.D. La. April 7, 2011); *In re Underwood*, 24 B.R. 501 (Bankr. N.D. Miss. 1982). In the matter before me, Carr does not dispute that each of the five above-listed elements of a preferential transfer are present in this case. Rather, he relies on the defense carved out by § 547(c)(2) that provides that a transfer incurred by a debtor in the "ordinary course" of his business or financial affairs may not be avoided. 11 U.S.C. § 547(c)(2).

Carr makes the following argument in support of the ordinary course defense – "the debt was incurred by the Debtor/Plaintiff in the ordinary course of her financial affairs. She asked

11

Defendant to loan her money. Accordingly, Section 547 is met." (Carr's Brief, p. 2) This argument is as specious as it is terse. There is no evidence in the record that Debtor is in the business of obtaining loans. Accordingly, entry of the state court judgment was a preferential transfer subject to avoidance. Summary judgment on the Preference Complaint will be granted.

Appropriate Orders will be entered in each adversary case.

**By the Court,**

_____
Mary D. France
Chief Bankruptcy Judge

Date: October 1, 2012

12

Case 1:11-ap-00481-MDF    Doc 27    Filed 10/01/12    Entered 10/01/12 16:33:13    Desc
Main Document    Page 12 of 12