## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| **TANISHA SHANTEE DEAN,** | * | **CHAPTER 7** |
| Debtor | * | |
| | * | **CASE NO. 1:11-bk-05680MDF** |
| **TANISHA SHANTEE DEAN,** | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **ADV. NO. 1:11-ap-00481MDF** |
| | * | |
| **ARTHUR CARR,** | * | |
| Defendant | * | |

## OPINION

On October 1, 2012, I issued an Opinion in the above-captioned adversary case in which I found that Arthur Carr ("Carr") violated the automatic stay in the bankruptcy case of Tanisha Dean ("Debtor") by refusing to surrender possession of her 2006 Toyota Solara (the "Solara"). On December 18, 2012, a hearing was held to determine the amount of damages, if any, that should be awarded to Debtor as a result of Carr's violation of the stay. The parties have filed briefs, and the matter is ready for decision.[1]

### I. Factual Findings

Debtor purchased the Solara in 2007 with financing provided by Toyota Financial. After Debtor defaulted on the loan, Toyota Financial repossessed the vehicle. Carr loaned Debtor the funds necessary to enable her to redeem the vehicle, and the parties agreed Carr would have an interest in the vehicle as security for the loan. Debtor promised Carr that she would repay the funds loaned, but the repayment terms were vague and never reduced to writing. At some point

---

[1]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(B) and (O). This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

not specified in the record, Debtor went to Louisiana and left the Solara with Carr. In or around March 2010, Debtor informed Carr that she wanted to move to Arizona and take the Solara with her, but Carr refused to surrender the vehicle. Carr maintained possession of the vehicle on the date Debtor filed her bankruptcy petition, August 16, 2011. As previously determined by this Court, Carr obtained a perfected security interest in the Toyota through possession.

Debtor listed Carr as a creditor in her schedules, and Carr received notice of the filing of the case. On several occasions after the petition was filed Debtor's counsel demanded Carr return the Solara, but Carr refused to comply. In November 2012, more than a year after Debtor filed her petition, Carr surrendered the vehicle.

Debtor is a single woman who holds a culinary degree from the Restaurant School at Walnut Hill College, Philadelphia, Pennsylvania. In or around March 2010, she moved from York, Pennsylvania to Maricopa, Arizona to live with her parents. Between March and September 2010, she was employed by two restaurants where she earned up to $11.00 per hour. After returning to York in or around September 2010, she obtained employment at Dawn Foods through a temporary staffing agency. Her earnings from this job – which she held for only one month – are not of record.

Debtor was unemployed at the time she filed her bankruptcy petition, but she continued to apply for work, primarily in the retail and food service industries. She also applied for positions at an assisted living facility, Country Meadows, and at Bell Socialization Services, which provides support services for mentally disabled individuals. According to her testimony, these entities would have offered her employment if private transportation had been available to her.

2

Debtor provided no evidence regarding the terms of these employment opportunities, such as the wages or hours offered.

Both before and after Debtor filed her Chapter 7 petition, she attempted to start her own business as a personal chef. Although she testified that several individuals were interested in hiring her, she presented no evidence that she had obtained clients for her personal chef services. Debtor testified that she investigated renting a vehicle in order to launch her business, but she concluded that the cost would have been prohibitive. On the date of the hearing Debtor was working in customer service at a local mall.

Prior to filing her bankruptcy case, CGA Law Firm ("CGA") agreed to handle the matter *pro bono*. In or around September 2012, Debtor and CGA executed an undated "Memorandum for Record" which stated that at the time Debtor first retained CGA:

> It was the understanding between CGA Law Firm and the Debtor that CGA would continue to represent the Debtor pro bono in her adversary actions against [Carr], provided that nothing would prohibit Debtor's counsel from collecting attorney fees from third parties who became obligated to pay attorneys fees by Order of the Court. It was the understanding between Debtor and her Counsel that in the event that the Court would award attorney fees for violation of the Automatic Stay and award other relief to the Debtor that counsel would be able to retain the award of counsel fees. In the event that the Court did not award counsel fees, that [sic] counsel would not seek to be paid for the time spent on the case.

After filing her bankruptcy petition, Debtor suffered from panic attacks and general anxiety because she was worried about how she would pay her bills. She was prescribed medication by her physician to treat this condition.

On October 1, 2012, I issued an Opinion in which I specifically found that Carr had violated the stay when he refused to return the vehicle despite the demands issued by Debtor's counsel. I further held that his "duty to return the Solara to the Debtor is a continuing one." *In*

*re Dean*, Adv. No. 1-12-ap-00481MDF, 2012 WL 4634291, *4 (Bankr. M.D. Pa. October 1, 2012). Despite the clear language of this Opinion, which Carr did not challenge by seeking reconsideration[2] or filing an appeal, he did not return the Solara to Debtor until November 3, 2012, after an Order was entered specifically directing him to do so.

On September 12, 2012, Debtor filed a Chapter 13 petition while the adversary proceeding in her Chapter 7 case was pending. According to the Disclosure of Compensation of Attorney for Debtor filed in the case, CGA agreed to represent Debtor for $3500 as a minimum fee. When Debtor failed to pay the filing fee in full, the case was dismissed on March 21, 2013.

## II. Discussion

Courts are divided on whether a creditor's failure to voluntarily return estate property to the debtor when it was lawfully repossessed prior to the filing of the petition constitutes a prohibited attempt to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3). In *Knaus v. Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773 (8th Cir. 1989), the Eighth Circuit determined that a creditor has an affirmative duty to return property repossessed prepetition and that turnover may not be conditioned on the debtor providing adequate protection. *Id.* at 775. Other courts have declined to follow *Knaus* and have required a debtor to provide a creditor with adequate protection before compelling the creditor to return the collateral. *In re Moffett*, 356 F.3d 518, 523 (4th Cir. 2004); *In re Empire for Him, Inc.,* 1 F.3d

---

[2]On October 8, 2012, Carr did file a motion to vacate the Order that was entered with the Opinion, but he did not challenge the findings regarding his violation of the stay. Rather, his motion addressed issues pertaining to insurance for the Solara and adequate protection payments, and to Debtor's filing of a second bankruptcy case while her first case was still open.

4

1156, 1160 (11th Cir. 1993); *In re Patterson*, 263 B.R. 82 (Bankr E.D. Pa. 2001); *In re Reid*, 423 B.R. 726, 735 (Bankr. E.D. Pa. 2010)(applying Delaware law).

In this Court's view, the correct interpretation of the Supreme Court's holding in *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) compels the conclusion that a creditor who has possession of property in which a debtor has an interest at the time a bankruptcy petition is filed has an obligation to immediately return the property to the debtor's estate upon receiving notice of the petition. *See Id.* at 205 (explaining that the estate includes property in which the debtor could have had a possessory interest on the date the petition was filed, including property not in the debtor's possession on the date of the petition). Property of the estate under 11 U.S.C. § 541 includes property made available to the estate under § 542(a). This section requires an entity that has possession of a debtor's property to turn the property over to the trustee. *Whiting Pools* suggests that a debtor does not need to provide adequate protection of a creditor's interest before the duty to turn over the property arises. Upon application to the court, however, a debtor may be compelled to provide adequate protection in order to retain the property.

As observed by the bankruptcy court in *Weber v. SEFCU*, 477 B.R. 308 (Bankr. N.D.N.Y. 2012), this interpretation of the Supreme Court's holding in *Whiting Pools* has been adopted by the majority of appellate courts to address the issue. *Id.* at 312 (citing *Thompson v. Gen. Motors Acceptance Corp. LLC*, 566 F.3d 699, 703 (7th Cir. 2009); *In re Yates*, 332 B.R. 1, 4-5 (B.A.P. 10th Cir. 2005); *In re Sharon*, 234 B.R. 676, 681 (B.A.P. 6th Cir. 1999); *State of California v. Taxel (In re Del Mission)*, 98 F.3d 1147, 1151 (9th Cir. 1996); *In re Knaus*, 889 F.2d at 775). The Court of Appeals for the Third Circuit has not addressed this issue, and the decisions of the bankruptcy courts in the Circuit are divided. In the absence of binding authority,

5

I adopt the majority view of the appellate courts that a creditor in possession of property of the bankruptcy estate must immediately and unconditionally turn over the property to the estate once the petition is filed. Having further clarified the position set forth in my earlier decision in this case, in which I found that Carr's retention of Debtor's vehicle after the filing of the petition was in violation of the automatic stay, I turn to the issue of the measure of damages for Carr's violation of the stay.

"[A]n individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). In the matter before me, Debtor seeks both actual and punitive damages. Any award of damages, whether actual or punitive, must be based upon the evidence submitted in support of the claim at the hearing held in this matter.

    *A. Actual Damages*

For purposes of § 362(k), "'[a]ctual damages' are amounts 'awarded . . . to compensate for a proven injury or loss; damages that repay actual losses.'" *In re Copeland*, 441 B.R. 352, 368 (Bankr. W.D. Wash. 2010) (citing *Sternberg v. Johnston*, 595 F.3d. 937, 947 (9th Cir. 2010) (quotation omitted)). Actual damages are "awarded to a complainant in compensation for his actual and real loss or injury, as opposed to 'nominal' damages and 'punitive' damages." *In re Roche*, 361 B.R. 615, 624 (Bankr. N.D. Ga. 2005) (citing *McMillian v. FDIC,* 81 F.3d 1041, 1054 (11th Cir.1996) (quotation omitted)).

Actual damages for a violation of the automatic stay "should be awarded only if there is concrete evidence supporting the award of a definite amount that can be ascertained with reasonable certainty." *In re Frankel*, 391 B.R. 266, 272 (Bankr. M.D. Pa. 2008) (citations

omitted). A damages award under § 362(k) "cannot be based on mere speculation, guess, or conjecture." *Id.*

### 1. Lost earnings

In the matter before me, Debtor seeks actual damages for wages she believes she would have earned if Carr had returned the Solara to her promptly. She asserts that she would have been able to accept a position with one of several entities where she had submitted applications for employment. Although she testified that she was offered a position at Dawn Foods, Country Meadows, and Bell Socialization, she did not describe the terms of employment, including the wage rate or number of hours offered.

In *In re Castillo*, 456 B.R. 719 (Bankr. N.D. Ga. 2011), the bankruptcy court addressed a similar situation in which a creditor retained possession of a vehicle owned by an unemployed debtor in violation of the stay. In that case, the debtor testified that he had been offered full-time, permanent employment, but had been unable to accept the position because the defendant had possession of his car. He provided no testimony regarding the wages he would have earned if he had been able to accept the offer. The bankruptcy court determined that the debtor's testimony was credible, but ruled that "the evidence is simply not substantial enough to allow the Court to determine the measure of wages to apply in calculating the damage suffered . . . ." *Id.* at 726 (internal quotations omitted); *see also In re Beair*, 168 B.R. 633, 637 (Bankr. N.D. Ohio 1994) (damages for lost wages denied where debtor's only evidence of earnings from use of repossessed truck was prior year's taxable income); *In re Thompson*, 426 B.R. 759, 768 (Bankr. N.D. Ill. 2010) (debtor who worked as children's entertainer could not recover damages without records to support claims for loss of income for services rendered at five to ten birthday parties).

7

In this case, without evidence describing the wage rate and hours offered, it would be wholly speculative for me to attempt to calculate the amount of lost wages suffered by Debtor. Therefore, Debtor's claim for actual damages for unrealized potential wages will be denied.

### 2. *Replacement costs*

Debtor is unable to recover the cost of obtaining a replacement vehicle or renting a car. Debtor provided evidence that a rental car would have cost approximately $170 a week. Plainly, this expense would have constituted actual damages if a vehicle had been rented, but this did not occur. The Court cannot award damages based upon speculation that Debtor could have rented a vehicle in this amount for the sixty-three weeks from the petition date until date the Solara was returned.

### 3. *Emotional distress*

Debtor asserts that Carr's refusal to return the vehicle caused her to suffer emotional distress for which she should be compensated. She testified that because she was worried about how she would pay her bills, she suffered anxiety and panic attacks. However, Debtor called no witnesses to corroborate her testimony regarding her emotional state or its cause.

Several standards have been developed by the appellate courts for plaintiffs who are seeking damages for emotional distress under 11 U.S.C § 362(k). *See In re Repine*, 536 F.3d 512, 521 (5th Cir. 2008) (citing *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999)) (stating that "specific information" rather than "generalized assertions" is required to obtain damages for emotional distress resulting from violation of stay); *In re Dawson,* 390 F.3d 1139, 1148-49 (9th Cir. 2004) (requiring a showing of "significant harm" by "clear and convincing evidence"); *Aiello v. Providian Financial Corp.,* 239 F.3d 876, 880 (7th Cir. 2001)

8

(tortious infliction of emotional distress claims for violation of the automatic stay must be accompanied by financial injury).[3] The Third Circuit has not yet ruled on the issue.

Most bankruptcy courts have held that emotional distress damages may be awarded only if a causal connection is established between the creditor's actions and the emotional distress suffered. "The majority of the courts have denied damages for emotional distress [caused by violation of the stay] where there is no medical or other hard evidence to show something more than fleeting or inconsequential injury." *Stinson v. Bi-Rite Restaurant Supply, Inc. (In re Stinson)*, 295 B.R. 109, 120 n. 8 (B.A.P. 9th Cir. 2003) *quoted in In re Wingard*, 382 B.R. 892, 906 (Bankr. W.D. Pa. 2008).

In the matter before me, Debtor testified that her physician prescribed medication to control her anxiety. But her testimony suggested that her numerous financial difficulties, including the possible loss of her home and a pre-petition IRS levy, also contributed to her emotional distress. Debtor did not offer any specific information regarding the injury or injuries that she suffered as a result of Carr's violation of the stay. Rather, she testified that she "was stressed a lot . . . trying to work out like how was I going to pay my bills. . . ." (N.T. 49). She further testified that she "was having like a lot of panic attacks and a lot of anxiety because I was very stressed because I couldn't have employment." (N.T. 49-50). Thus, her emotional turmoil

---

[3]In *Dawson*, the Ninth Circuit advised that a debtor may establish that he has suffered significant emotional harm either through corroborating medical evidence or convincing testimony of emotional distress by family members, friends or coworkers. In rare cases, damages may be awarded when the distress is "readily apparent." 390 F.3d at 1150 (citing as an example the facts of *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987), in which creditor entered debtor's home at night and pretended to hold a gun to debtor's head). *Id.*

9

appears to have been caused by her financial problems generally and not attributable to Carr's refusal to return her Solara.[4]  For these reasons, damages for emotional distress will be denied.

### 4. Attorneys' fees

As indicated in the Factual Findings, CGA agreed to represent Debtor on a *pro bono* basis prior to filing her Chapter 7 petition in August 2011.  The fee agreement was later amended, sometime in or around October 2011, to reflect the parties' understanding that the fees could be paid by "third parties" upon entry of a court order.  The amended agreement specifically stated that Debtor would not be responsible for payment of attorney's fees under any circumstances in her Chapter 7 case.

As quoted above, the language of § 362(k) provides for the compensation of "actual damages."  Attorneys' fees are included in "actual damages" and are not addressed as a separate category of damages.  *In re Thompson*, 426 B.R. at 765 (observing that § 362(k) is not a fee-shifting statute, which provides that the prevailing party is entitled to an award of fees separate from a damages award).  Thus, the issue arises as to whether a debtor incurs "actual damages" in the form of counsel fees when she is not and will never be liable for such fees.  While bankruptcy courts are not in complete agreement on this issue, the better-reasoned decisions

---

[4]For an example of specific proof of emotional distress directly caused by a creditor's violation of the stay see *In re Collier* where a creditor frustrated by a debtor's bankruptcy posted a large sign outside of his business on the major throughway of a small Texas town reading "Brad Collier owes me $984.23 will you please come and pay me!"  The debtor was subject to humiliation and ridicule in the community, receiving nearly sixty telephone calls from friends and neighbors after the sign was posted.  Debtor provided corroborating evidence of his emotional distress by calling his ex-wife and son to testify regarding his emotional state, and introduced evidence from his physician regarding a face and body rash, along with worsened acid reflux, that were attributed to stress.  *In re Collier*, 410 B.R. 464, 477 (Bankr. E.D.Tex 2009).  Collier sought compensatory damages of $1000 per day for each of the 21 post-petition days that the sign remained on display.  The Court awarded a total of $1500.

deny counsel fees under § 362(k) if the debtor is represented on a *pro bono* basis and will never be personally liable for the fees.

The bankruptcy court in *Thompson* discussed the rationale underpinning this rule. In *Thompson*, GMAC refused to return a repossessed vehicle to the debtor after he filed a Chapter 13 petition. The debtor entered into a written fee agreement in connection with his bankruptcy case in which he agreed to pay $3500 for the standard services provided by attorneys in Chapter 13 cases filed in the district. *Id.* at 766. The bankruptcy court denied the request for sanctions against GMAC. The debtor's attorneys advised that they believed the debtor had a strong chance of winning on appeal and agreed to pursue the appeal without requiring further fees. The debtor was assured that if the decision was reversed, his attorneys would be able to recover their fees from GMAC. When the bankruptcy court's decision was reversed and remanded for the assessment of damages, the debtor and his counsel each testified that the debtor was not obligated to pay further fees beyond the flat fee paid at the beginning of the case. *Id.* at 766-67. Based on this testimony, the bankruptcy court found that because the debtor was not legally responsible for fees related to the motion pursued against GMAC for violation of the stay and the resulting appeal, the debtor could not collect fees from GMAC as "actual damages." *Id.* at 767.[5]

_____

[5]The *Thompson* court took pains to point out that its ruling would not necessarily preclude *pro bono* counsel from obtaining fees under § 362(k). The Court advised that:

> if they proceed carefully, [*pro bono* counsel] can preserve a fee claim under
> § 362(k) while assuring the client that he will not have to pay that fee.
> Thompson's attorneys could have entered into a clear written agreement
> providing that the fees were to be due from him but contingent upon success of
> the appeal and collection from GMAC. By doing so, they could have eliminated
> Thompson's risk of payment while also ensuring that Thompson actually incurred
> damages in the form of attorneys' fees that were due from the client. . . .

*Id.*

11

*See also In re Hutchings*, 348 B.R. 847, 910 (Bankr. N.D. Ala. 2006) (holding that § 362(k) "requires that before attorney fees may be awarded, the fees must have been actually incurred *by the debtor*." (emphasis in the original)); *In re Hedetmeimi*, 297 B.R. 837, 843 (Bankr. M.D. Fla. 2003) (finding that debtor represented by legal services agency not entitled to recover attorneys' fees as actual damages); *In re Gagliardi*, 290 B.R. 808, 820 (Bankr. D. Colo. 2003) (finding that attorneys' fees must be part of actual damages). *But see In re Parks*, 2008 WL 2003163 (No. 07-18341, Bankr. N.D. Ohio May 6, 2008) (awarding fees to *pro bono* counsel without discussion). Therefore, the Court concludes that Debtor has failed to prove that she incurred attorneys fees as actual damages in her Chapter 7 case.

The Chapter 13 case, however, is another matter. Once Debtor filed her Chapter 13 petition, a second and simultaneous duty to return the Solara to Debtor arose. Carr nonetheless continued to deny Debtor possession of the vehicle, in violation of the automatic stay. In the second case, Debtor agreed to pay CGA a minimum fee of $3500 for representation. Although Debtor never paid CGA any of the promised fees prior to dismissal of the case, she incurred attorney's fees as actual damages related to Carr's violation of the automatic stay.

"Imposition of damages for willful violation of the automatic stay serves an important purpose even after the underlying bankruptcy case has been dismissed; it provides compensation for and punishment of intentionally wrongful conduct." *In re Davis*, 177 B.R. 907, 911 ( B.A.P. 9th Cir. 1997) *quoted in In re Rodriguez*, 2012 WL 589553, *1 (No. 07-24687(MBK), Bankr. D. N.J. Feb. 22, 2012) (other citations omitted). Further, whether or not Debtor paid some or all of the fees owed is irrelevant to the Court's determination that Debtor incurred actual damages in connection with the Chapter 13 case. A debtor is not required to pay fees to the attorney before

12

they can be recovered as damages in an action under §362(k) for violation of the automatic stay. *In re Thompson,* 426 B.R. at 765-66. Unless there has been a release or waiver of fees, Debtor is obligated to pay CGA the fees described in the Disclosure. Accordingly, it is appropriate to award attorneys' fees as damages for the services rendered by CGA in the Chapter 13 case in response to Carr's violation of the automatic stay.

CGA submitted time records for all work performed on Debtor's behalf, but did not distinguish Chapter 7 services from Chapter 13 services. Further, CGA did not segregate services provided in connection with enforcing the automatic stay from other services rendered. Nevertheless, the Court is able to identify the time spent by CGA in the Chapter 13 case pursuing Debtor's claim against Carr by reviewing the firm's time records submitted in evidence. Having reviewed the time entries submitted in Debtor's Exhibit 12, I find that Debtor incurred fees as actual damages in connection with the enforcement of the stay in the amount of $2500.

### B. Punitive damages

Punitive damages are awarded when defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. It is an appropriate response to particularly egregious conduct for both punitive and deterrent purposes. *In re Gagliardi*, 290 B.R at 822. To recover punitive damages, the plaintiff must prove that the defendant acted with actual knowledge that he was violating a protected right or with reckless disregard of whether he was violating plaintiff's rights. *In re Wagner*, 74 B.R. 898, 903-04 (Bankr. E.D. Pa. 1987) (quoting *Cochetti v. Desmond,* 572 F.2d 102 (3d Cir.1978)); *In re Patterson*, 263 B.R. 82, 97 (Bankr. E.D. Pa. 2001). Punitive damages are especially appropriate

when a party has acted in "arrogant defiance" of the Bankruptcy Code.[4]  *In re Medlin*, 201 B.R.

188, 194 (Bankr. E.D. Tenn. 1996) *cited in In re Curtis*, 322 B.R. 470, 486 (Bankr. D. Mass.

2005)).  Whether actions taken by a party in connection with a violation of the automatic stay

merit an assessment of punitive damages is a matter left within the discretion of the bankruptcy

court. *Clayton v. King (In re Clayton),* 235 B.R. 801, 811 (Bankr. M.D.N.C. 1998); *United Bank,*

*Inc. v. Howard (In re Howard)*, 2011 WL 578777, *13 (No. 2:10CV962 W.D. Pa. 2011).

       Bankruptcy courts consider several factors when determining whether to award punitive

damages.  In the *Frankel* case, I held that the following factors are relevant:  (1) the creditor's

conduct; (2) the creditor's motives; (3) the creditor's ability to pay damages[5]; and (4) any

provocation by the debtor. *In re Frankel*, 391 B.R. at 275; s*ee also In re B. Cohen & Sons*

*Caterers, Inc.,* 108 B.R. 482, 487 (E.D. Pa. 1989) (court must consider harm to debtor and

creditor's motive, conduct, and ability to pay damages); *In re Aponte*, 82 B.R. 738, 745 (Bankr.

E.D. Pa. 1988) (court must consider both the wrongdoer's act and his motive); *In re Wagner,* 74

B.R. 898, 905 (Bankr. E.D. Pa.1987) (court must consider the nature of the conduct and the

ability to pay).  Other courts have suggested that the sophistication of the creditor and the extent

of the harm to the debtor also should be considered. *Varela v. Ocasio (In re Ocasio)*, 272 B.R.

---

[4]Some courts have held that a debtor must show actual damages in order to recover
punitive damages.  *In re Bernstein*, 447 B.R. 684, 705 (Bankr. D. Conn. 2011) (citing *In re*
*Prusan,* 2010 WL 813778, *3 (No. 09–49716–CEC, Bankr. E.D.N.Y. March 2, 2010)); *In re*
*Pulver–Thomas,* 2005 WL 1595727,  *1 (No. 04–10835,  Bankr. D. Vt. July 1, 2005). These
courts have recognized, however, that if the violation "manifested an arrogant defiance of federal
law," punitive damages are appropriate without regard to any harm suffered by the debtor. *In re*
*Bernstein*, 447 B.R. at 705 (citing *In re Roche,* 361 B.R. 615, 624 (Bankr. N.D. Ga. 2005).

[5]The ability to pay factor is more relevant to the Court's determination of the appropriate
amount of damages than it is to the determination of whether the defendant's conduct merits the
imposition of punitive damages.  *See In re Bivens*, 324 B.R. 39, 44 (Bankr. N.D. Ohio 2004).

815, 825 (B.A.P. 1st Cir. 2002) (quoting *In re Shade,* 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001));

*In re Gagliardi*, 290 B.R. at 889; *McClain Ford-Mercury, Inc. v. Baggs (In re Baggs)*, 283 B.R.

726, 729 (Bankr. C.D. Ill. 2002). In this case, I find that it is appropriate to consider all of these

factors.

        This is not the typical case of a debtor filing a bankruptcy case to save a vehicle after it

has been repossessed by a lender in the business of making automobile loans. Debtor obtained a

loan from Carr, a distant relative, so that she could redeem her vehicle after it had been

repossessed by Toyota Financial. Carr is not a financial institution or a finance company. Based

upon the manner in which the loan transaction was structured, he may be regarded as an

unsophisticated lender.  Debtor acknowledged that she was obligated to repay the loan to Carr,

and she agreed to include him on the title as a secured creditor. But the parties never reduced the

agreement to writing or even agreed to repayment terms. Carr did not repossess the Solara;

Debtor voluntarily surrendered it before she moved to Arizona. Once Carr obtained possession

of the vehicle, his lien was perfected. No evidence was introduced to support a finding that

Debtor intended to surrender the vehicle permanently to Carr. She did not transfer the title to him

or surrender possession of the Solara in satisfaction of the debt. Debtor repeatedly attempted to

regain possession of the vehicle after she returned to Pennsylvania. When Carr obtained a

judgment against her for the amount of his loan and began execution proceedings, she filed her

bankruptcy petition. After the petition was filed, CGA made numerous attempts to obtain

voluntary

surrender of the vehicle from Carr, who was represented by counsel. All of these attempts were either ignored or rebuffed by Carr.

        1. *Application of factors*

        *a. Creditor's conduct*

Carr did not return the Solara to Debtor until November 3, 2012, thirty-three days after I issued Opinion finding him to be in continuing violation of the stay and fifteen months after Debtor filed her petition. Although the Order that accompanied the Opinion did not specifically direct Carr to return the vehicle, the Order granted summary judgment to Debtor "on the issue of whether Defendant violated the automatic stay under 11 U.S.C. § 362 by refusing to return the Solara to Plaintiff upon demand after the filing of her bankruptcy petition." *In re Dean*, 2012 WL 4634291, *4 (Adv. No. 1-11-ap-00481MDF, Bankr. M.D. Pa. October 1, 2012). As noted above, Carr was under a duty to immediately return the vehicle once he was informed that Debtor had filed her bankruptcy petition. This duty to comply with the Code was not contingent upon Debtor providing adequate protection to Carr's interest.

While Carr insisted that he had no duty to surrender the Solara to Debtor, his false belief is not a defense. It is axiomatic that "a creditor's good faith belief that it had a right to [a debtor's] property is irrelevant" to the question of whether the creditor has willfully violated the stay. *In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007) (citing *In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005);. *Kaneb*, 196 F.3d at 268-69; *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 483 (9th Cir. 1989). A creditor who presumes to "unilaterally determine the scope and effect of the automatic stay" does so at his peril. *In re Diviney*, 225 B.R. 762, 777 (B.A.P. 10th

Case 1:11-ap-00481-MDF    Doc 62    Filed 04/16/13    Entered 04/16/13 11:40:55    Desc
Main Document        Page 16 of 20

Cir. 1998); *In re Pachman*, 2010 WL 1489914, *4 (No. 09-37475, Bankr. S.D. N.Y. April 14, 2010).

Carr refused to turn over the Solara to Debtor because he believed that it was uninsured, which had been an ongoing point of contention between the parties. Before she left the Solara in Carr's possession in March 2010, Debtor was involved in an accident with the vehicle. Carr had provided insurance coverage for the Solara on his policy, but demanded that Debtor pay the deductible. According to Carr, it was at this time that Debtor left the Solara in his possession. While Carr's concern about insurance coverage is understandable, it did not justify his refusal to return the vehicle to Debtor. *See In re Diviney*, 225 B.R. at 777 (bank could not hold vehicle "hostage" under the guise of requiring proof of insurance; punitive damages against bank for violation of the stay appropriate).

In this case, Carr was an unsophisticated lender. He was, however, represented by counsel who should have made him aware of his duty to immediately return the vehicle to Debtor. If Debtor failed to make adequate protection payments or insure the vehicle, he could have pursued relief from the stay. Carr's violation of the stay was more than a bare or technical violation. It was an intentional act that deprived Debtor of the use of her vehicle for a significant period of time. It is an example of the type of case the Third Circuit has described as being appropriate for the imposition of punitive damages – those "in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." *Cochetti*, 572 F.2d at 106.

17

### b. Creditor's motives

Nothing in the evidence presented suggested that Carr intended to injure Debtor. At trial the testimony and demeanor of both Debtor and Carr displayed the friction that had developed between the two parties over the repayment of the loan and Carr's retention of the vehicle. But Carr's refusal to surrender the vehicle seemed to be based primarily on his desire to obtain repayment for the loan.

### c. Provocation by Debtor

Carr argued at trial that Debtor "provoked" his actions by failing to make payments on the Solara pre-petition. The Court does not believe that the failure to make payments, especially under the circumstances of this case, constitutes provocation. There is some evidence that Debtor failed to make appropriate repairs to the vehicle when it was damaged in the accident, but while intentional destruction or damage to a vehicle may be regarded as provocation, failure to repay a debt or repair the collateral usually would not.

### d. Creditor's ability to pay

The record contains little information pertaining to Carr's ability to pay punitive damages. *See In re Crawford*, 388 B.R. 506 (Bankr. S.D. N.Y. 2008) (while Court found creditor liable for punitive damages for stay violation, it could not calculate proper amount of such damages without evidence of ability to pay) *aff'd in part, vacated and rem'd on other grounds* 476 B.R. 83 (S.D. N.Y. 2012). Carr's ability to advance Debtor the funds necessary to redeem the Solara in 2010 is some evidence that he has the ability to pay punitive damages. The testimony that he has no source of income other than Social Security, however, suggests that his ability to pay is limited.

18

### e. *Extent of harm to Debtor*

Debtor was unable to meet her burden to establish the amount of actual damages that she sustained as a consequence of Carr's refusal to return her vehicle other than attorneys' fees in her Chapter 13 case. Although some of the harm she suffered could not be quantified, Debtor was deprived of the use of her vehicle for fifteen months, which limited her opportunities to pursue employment and created general inconvenience in her daily living. Debtor had numerous financial difficulties and limited options to obtain alternative transportation. Although the Court is unable to quantify her losses, they were not insignificant.

### 2. *Amount of punitive damages.*

As discussed above, Carr is an unsophisticated lender who obtained possession of the Solara pre-petition with Debtor's consent. It is unlikely that Carr will make another vehicle loan to anyone. Therefore one of the purposes of punitive damages – deterrence – is inapplicable in this case. Nevertheless, once Debtor filed for bankruptcy he was under a duty to promptly return the vehicle. Having considered the above factors, punitive sanctions of $500 are imposed against Carr.

### III. Conclusion

For all the reasons stated above, I conclude that Debtor is entitled to compensation for actual damages in the amount of $2500 and punitive damages in the amount of $500. An appropriate order follows.

By the Court,

Date: April 16, 2013

Mary D. France

Chief Bankruptcy Judge

(JK)

Case 1:11-ap-00481-MDF    Doc 62    Filed 04/16/13    Entered 04/16/13 11:40:55    Desc
Main Document    Page 20 of 20